UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 16-CV-3818 (JFB)
_____

SONAM GYALPO,

Appellant,

VERSUS

HOLBROOK DEVELOPMENT CORP.,

Appellee.

_____

**MEMORANDUM AND ORDER**
August 29, 2017
_____

JOSEPH F. BIANCO, District Judge:

Sonam Gyalpo ("appellant" or "Gyalpo") appeals from the Bankruptcy Court's ruling in which it disallowed his claim for unpaid wages in the amount of $25,161.21 against debtor Holbrook Development Corp. ("HDC" or "debtor"). (ECF No. 1.) In particular, Gyalpo challenges the legal standard applied by the Bankruptcy Court to determine that he was not an "employee" of the debtor. The appellant also contends that a remand is warranted to consider new evidence that appellant has uncovered in a separate litigation against debtor in which its owner and general manager purportedly contradict the debtor's position before the Bankruptcy Court.

As set forth below, in the absence of any guidance from the Second Circuit regarding the applicable standard for analyzing these legal issues in the context of a bankruptcy proceeding, it appears that the Bankruptcy Court applied general, common law agency principles to determine whether appellant was an "employee" of the debtor. However, this Court concludes that the Bankruptcy Court should apply the applicable standards utilized under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including the rules regarding the burden of proof under those statutory frameworks, in deciding appellant's claim. Thus, the Court remands to the Bankruptcy Court to apply that legal standard to the facts and, on remand, the Bankruptcy Court should also consider any new evidence on this issue presented by the appellant.

## I. BACKGROUND

The Court assumes the parties' familiarity with the full facts and procedural history of this action and summarizes the facts and history relevant to the instant appeal based on the Bankruptcy Record on Appeal. ("R.," ECF No. 4-2.)

### A. Bankruptcy Proceedings

Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code alongside 14 other associated entities on December 24, 2014. (*See In re Holbrook Development Corp.*, Bankr. Case No. 8-14-75671-ast ("*In re HDC*"), ECF No. 1.) Appellant filed a claim in the case on March 18, 2015, and debtor filed an objection on November 9, 2015. (*See* R. at 7–16.) The Bankruptcy Court held a hearing on the claim on March 14, 2016, accepting affidavits of direct testimony from Gyalpo and Saverio Settani, the general manager for HDC, beforehand and permitting cross-examination at the hearing itself. (*See id.* at 146–263.)

Based upon the affidavits and the testimony, the following evidence was adduced at the hearing. Each of the bankrupt entities was owned by Steven Keshtgar and operated as a gas station. (*See id.* at 174–75.) Appellant worked as a cashier at several of these gas stations, including debtor's gas station in Holbrook, New York. (*Id.* at 72–73.) He was initially hired by Sudheer Kumar, a manager at several different locations, to work the night shift at a gas station in Centerreach, New York, for several months while the normal night shift cashier was on leave. (*Id.* at 72.) When the regular night shift cashier returned, Kumar made appellant a "floater" who would fill in at various gas stations when a worker was absent. (*Id.* at 73.) Appellant would periodically receive calls from Kumar or a man named "Sujay" when work became available. (*Id.*) Kumar signed weekly schedules prepared by appellant that showed the places and hours appellant worked. (*Id.* at 73, 77–83, 216, 224–25.) Appellant would typically work as a floater from 7:00 p.m. until 7:00 a.m., was paid around $480 per week in cash off the books, and would normally communicate with Kumar about work issues. (*Id.* at 73–74, 215, 219.) He only met Keshtgar once. (*Id.* at 72.) At some point, Kumar began delaying appellant's payments and taking money out of his pay before he eventually stopped paying appellant entirely. (*Id.* at 74.) Appellant worked at debtor's gas station for the last few weeks it was open in January 2015. (*Id.* at 74.)

Aside from the schedules signed by Kumar, there are no documents verifying appellant's employment with debtor. Appellant is never mentioned in any of debtor's books and records for the relevant time period. (*Id.* at 117.) In particular, debtor has no employment application, completed W-2 forms, time sheets, or paystubs for appellant, and its employee, payee, and employee withholding lists do not include him. (*Id.* at 117, 120–126, 213–14, 233–34.) The general manager (Settani) never scheduled appellant to work or processed payroll for him. (*Id.* at 118.) Appellant admitted that he never received any payment from HDC, only from Kumar. (*Id.* at 214.)

The Bankruptcy Court denied appellant's claim in an oral ruling on June 21, 2016 (*see* Appendix A to Appellant's Br., Transcript of Oral Ruling dated June 21, 2016, ECF No. 5-1, at 306–325 ("Oral Ruling")[1]), and issued a

---

[1] Citations to the Oral Ruling transcript will reference the transcribed page number rather than the ECF page number.

2

written order summarily confirming that ruling on June 23, 2016 (R. at 290). It noted that appellant worked the majority of his employment at the Centerreach location before working as a floater at other gas stations including HDC's. (Oral Ruling at 15.) It further found that, though the time sheets produced by appellant and debtor conflicted as to whether he was paid by Centerreach, appellant "did not produce tangible evidence that he was owed any money by Holbrook." (*Id.* at 16.) The court rejected appellant's argument that "Kumar had the authority to deviate from his corporate protocol and pay him in cash or to deviate from the Debtor's other established corporate employment policies" because appellant "only . . . testified that Mr. Kumar had him drive to different gas stations to cover various shifts and pick up cash deposits, but did not establish that Mr. Kumar could or did bind Holbrook to pay Mr. Gyalpo off the books or outside the standard scanning protocol." (*Id.*) From this evidence, the court concluded that debtor "met its burden of overcoming the presumption of prima facie validity of Mr. Gyalpo's claim" and appellant "did not meet his burden of proving that he was owed any money by the Debtor." (*Id.* at 17.) In particular, it held that, although Gyalpo went

> to great lengths in discussing . . . the FLSA and [NYLL] standards, [he] simply [has] not demonstrated how [he] . . . was an employee or individual, as defined under Section 507(a)(4), as to Holbrook . . . and simply [has] not proven that [he] was an employee of the entity against which the claim was asserted.

(*Id.* at 18.) As such, the Bankruptcy Court disallowed appellant's claim. (*Id.*; R. at 290.)

### B. Appeal

Appellant filed his notice of appeal on July 8, 2016. (ECF No. 1.) This Court received the Bankruptcy Record on August 23, 2016. (ECF No. 4.) Appellant filed his brief in support of the appeal on September 6, 2016 (ECF No. 5), debtor responded on October 6, 2016 (ECF No. 6), and appellant filed a reply on October 20, 2016 (ECF No. 7). The Court has fully considered the parties' submissions.

### II. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). Part VIII of the Federal Rules of Bankruptcy Procedure outlines the procedure governing such appeals. Fed. R. Bankr. P. 8001.

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007); *see also Lubow Machine Co., Inc. and Marksment Manufacturing, Inc. v. Bayshore Wire Products Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law *de novo*, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion." (citations omitted)); *accord Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs Inc.)*, 922 F.2d 984, 988-89 (2d Cir. 1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*,

3

610 F.3d 44, 51 (2d Cir. 2010) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Collins v. Hi-Qual Roofing & Siding Materials, Inc.*, Nos. 02-CV-0921E(F), 02-CV-0922E(F), 2003 WL 23350125, at *4, n.16 (W.D.N.Y. Dec. 18, 2003) ("'[A] finding is only clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . This standard precludes this Court from reversing the Bankruptcy Court's decision if its account of the evidence is plausible, even if this Court is convinced that it would have weighed the evidence differently.'" (quoting *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 484 (E.D. Pa. 1989))).

### III. DISCUSSION

Appellant argues that the Bankruptcy Court applied the wrong legal standard in determining that he was not employed by the debtor, and that, under the standards promulgated in the FLSA and NYLL, he qualified as an employee. (*See* Appellant's Opening Br., ECF No. 5 ("Appellant's Br."), at i.) He further contends that the Bankruptcy Court erroneously applied the burden of proof (*id.*), and that remand is warranted in light of newly discovered evidence (Appellant's Reply Br., ECF No. 7 ("Appellant's Reply"), at 6–9). As set forth below, the Court agrees that the Bankruptcy Court did not apply the correct legal standard on the issue of appellant's employment and, therefore, remands to allow the Bankruptcy Court to apply the standard set forth in this Memorandum and Order. In particular, on remand, the Bankruptcy Court should consider the applicable standard in the FLSA and NYLL context, including the rules regarding the burden of proof, and should consider any new evidence presented by appellant.

### A. Appellant's Employment

Appellant argues that the Bankruptcy Court erred as a matter of law because, in determining whether debtor employed him, it applied general, common law agency principles, rather than the statutory definitions of "employer" and "employee" articulated in the FLSA and NYLL. Under these definitions, appellant asserts that he qualifies as an employee of the debtor.

Appellant claims entitlement to payment of unpaid wages from the bankruptcy estate under the FLSA and NYLL. (*See* R. at 13.) He further asserts that his claim is entitled to priority pursuant to 11 U.S.C. § 507(a) ("Section 507(a)"). (*Id.* at 11.) Under that provision, priority is given to unsecured creditors seeking unpaid "wages, salaries, or commissions." 11 U.S.C. § 507(a)(4)(A). Its purpose is "to enable employees displaced by bankruptcy to secure, with some promptness, the money directly due to them in back wages, and thus to alleviate in some degree the hardship that unemployment usually brings to workers and their families." *In re Prickett*, No. 00-00353, 2000 WL 33712200, at *1 (Bankr. D. Idaho Aug. 28, 2000) (quoting *United States v. Embassy Restaurant, Inc.*, 359 U.S. 29, 32 (1959)).

The statute does not define "wages," nor does it specify how courts are to determine whether a particular individual is owed "wages, salaries, or commissions" by a debtor. *See Prickett*, 2000 WL 33712200, at *1 ("No decisive test has been developed by bankruptcy courts in determining employee status for priority wage claims."). In the Second Circuit, it has been held that, under an earlier version of the Bankruptcy Code, "the claim must be such as arises from the relation of master and servant as distinguished from a mere contractual relationship" to be entitled to priority. *In re Ageloff*, 40 F. Supp. 369, 370 (S.D.N.Y. 1939) (cit-

ing, *inter alia*, *In re Progressive Luggage Corp.*, 34 F.2d 138, 138 (2d Cir. 1929) (holding that corporate officer was not entitled to wage priority)). In *Ageloff*, for instance, the debtor, a clothing manufacturer, designed and cut materials that it sent out to contractors who sewed and finished the clothing. *Id.* at 370. The agreement between the manufacturer and the contractors provided that the manufacturer was responsible for the wages of the contractors' employees if the contractor failed to pay. *Id.* When the manufacturer went bankrupt, employees of the contractors made claims against the bankrupt estate and sought wage priority under the Bankruptcy Code. *Id.* Despite the contractual provision making the manufacturer responsible for the employees' wages in some instances, the court held that they were not "employees" of the manufacturer but of the contractor, and, therefore, were not entitled to priority. *Id.* The court reasoned that "[t]here was no master and servant relationship between the parties." *Id.*

No Second Circuit case provides a more precise test for determining whether an individual qualifies as an "employee" for wage priority purposes under the Bankruptcy Code beyond requiring a master/servant relationship. Courts addressing this issue in other jurisdictions, however, have resorted to state law to analyze whether an employee-employer relationship exists between a claimant and a debtor. *See, e.g.*, *In re Owen*, 324 B.R. 373, 375 (Bankr. N.D. Fla. 2004); *In re Kasson Inc., U.S.A.*, 109 B.R. 352, 353 (Bankr. E.D. Wis. 1989); *Matter of Dahlman Truck Lines, Inc.*, 59 B.R. 218, 220 (Bankr. W.D. Wis. 1986). In addition to state law, some courts have also looked to federal law for guidance. *See, e.g.*, *In re W. Wayne Transportation, Inc.*, No. 00-10028C-7G, 2001 WL 1699665, at *2 (Bankr. M.D.N.C. Oct. 5, 2001); *Prickett*, 2000 WL 33712200, at *1; *In re Saint Joseph's Hosp.*, 126 B.R. 37, 41 (Bankr. E.D. Pa. 1991).

The court in *Saint Joseph's Hospital* provided the most detailed analysis of this issue. There, the court examined analogous federal bankruptcy cases and Pennsylvania unemployment compensation law to determine whether a dentist was an employee of the debtor-hospital under Section 507(a). *See* 126 B.R. at 40–43. Specifically, the court relied on *In re Estey*, 6 F. Supp. 570 (S.D.N.Y. 1934), and *In re All Star Feature Corp.*, 231 F. 251 (S.D.N.Y. 1916), where "a business school teacher and an actress, respectively, were found not entitled to priorities for unpaid salaries because they were not 'workmen' or 'servants' of the respective debtors" under the Bankruptcy Code. *Saint Joseph's Hosp.*, 126 B.R. at 40. The court also consulted "the common law definition of employee as dictated by the pertinent [Department of] Treasury Regulation," which provided that an employer-employee relationship "exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished." *Id.* (quoting 26 C.F.R. § 31.3121(d)–1(c)(2)). Under Pennsylvania law, meanwhile, the test to distinguish between employees and independent contractors was "whether [the purported employee] is subject to the [purported employer's] control, not only with regard to the work to be done but also with regard to the manner of performing it and whether the individual has a proprietary interest in some business he can operate free from the control of any other individual." *Id.* (quoting *Monroe G. Koggan Associates, Inc. v. Commonwealth Unemployment Compensation Bd. of Review*, 472 A.2d 277, 279 (Pa. Commw. Ct. 1984)). From these sources, the court concluded that Section 507(a) "require[s] that a substantial measure of control over the claimant's con-

5

duct . . . be exercised by the employer-debtor before the claimant may be deemed an 'employee' entitled to a priority claim." *Id.* at 43.

Other courts have relied on the approach and definition employed in *Saint Joseph's Hospital*. *See Prickett*, 2000 WL 33712200, at *2 (comparing Department of Treasury guidelines with Idaho law to conclude that "the right to control the employee" is a "critical consideration" while also considering other factors relevant under state law); *W. Wayne Transportation, Inc.*, 2001 WL 1699665, at *2 (comparing a state supreme court case with *Saint Joseph's Hospital* and concluding that, "[i]n both instances, the most important single factor in determining whether an employer-employee relationship exists is whether the employer retains the right to control and direct the manner in which the work is to be performed, as opposed to leaving the worker free to exercise his own judgment regarding the method for doing the work"). This Court, however, could find no case—and appellant cites none—where a court adopted the FLSA definitions for Section 507(a) wage priority directly.

Still, employing the approach adopted in *Saint Joseph's Hospital*, the Court concludes that the FLSA definition of "employer" is relevant to the determination of whether appellant has a valid claim against debtor under Section 507(a) because New York state law utilizes essentially that same definition for labor disputes. Specifically, the NYLL defines an employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). Because this definition closely resembles the definition in the FLSA, "[d]istrict courts in this Circuit have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (collecting cases); *see also Topo v. Dhir*, No. 01 CIV. 10881 (PKC), 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004) ("There is general support for giving FLSA and the New York Labor Law consistent interpretations.").

The Second Circuit has made clear that "'[t]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts,' and depends 'upon the circumstances of the whole activity.'" *Sethi*, 974 F. Supp. 2d at 188 (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013)). It has set forth "four factors that better determine the 'economic reality' of a putative employment relationship, specifically, 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records'" (the "*Carter* factors"). *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). The factors are not exclusive, however. *See Irizarry*, 722 F.3d at 105 ("None of the factors used in any of these cases, however, comprise a rigid rule for the identification of an FLSA employer.") (citation omitted).

The NYLL provides that an "employee" is "any person employed for hire by an employer in any employment." NYLL § 190(2). The standard for determining whether a person qualifies as an employee under the NYLL differs slightly from this determination under the FLSA. *See Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 922–23 (S.D.N.Y. 2013). Specifically,

6

the New York Court of Appeals has articulated a standard for determining whether a worker is an employee . . . under the NYLL that is phrased differently than the FLSA inquiry. New York courts apply the "common law" test—a test used not only in connection with wage-protection statutes, but also to determine such issues as *respondeat superior* liability in tort suits, eligibility for unemployment benefits, and compliance with tax laws. Although substantially similar to the FLSA, the common law focuses more on the degree of control exercised by the purported employer, as opposed to the economic reality of the situation.

*Id.* Under New York's common law test, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 802 N.E.2d 1090, 1092–93 (N.Y. 2003). In "assessing control," New York courts ask "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule" (the "*Bynog* factors"). *Id.* at 1093.[2]

As for federal law, the Court agrees with the well-reasoned analysis in *Saint Joseph's Hospital* regarding analogous bankruptcy cases and relevant federal regulations and, therefore, adopts the interpretation articulated in that case. *See* 126 B.R. at 40–43. In other words, under the relevant cases, statutes, and regulations, the key factor in determining whether appellant is an employee of the debtor is the degree of control the purported employer exerts over the purported employee. *Id.* at 42.

Thus, like in *Saint Joseph's Hospital*, *Prickett*, and *W. Wayne Transportation*, both federal law and New York state law indicate that the most important inquiry concerns the amount of control the debtor exerts over appellant's activities. *See Prickett*, 2000 WL 33712200, at *2; *W. Wayne Transportation, Inc.*, No. 00-10028C-7G, 2001 WL 1699665, at *2; *Saint Joseph's Hosp.*, 126 B.R. at 43; *Irizarry*, 722 F.3d at 104–05; *Bynog*, 802 N.E.2d at 1092–93. In assessing the degree of control an entity exerts over an individual, consultation of both the *Carter* and *Bynog* factors is appropriate.

Here, the Bankruptcy Court did not specify what test it was utilizing to determine whether appellant qualifies as an "employee" of the debtor. Instead, it concluded that appellant was not an employee because (1) he only provided time sheets to prove his employment at the Centereach location and did not provide details about his work for debtor, and (2) he "did not establish that Mr. Kumar could or did bind [HDC] to pay Mr. Gyalpo off the books." (Oral Ruling at 15–16; *see also* R. at 77–88 (all timesheets for Centerreach location).)

With respect to the first rationale, however, the NYLL recognizes the concept of a "single-integrated" or "joint" enterprise.[3]

---

[2] Though this test is most often used in determining whether a person is an employee or an independent contractor, the Court sees no reason why it should not apply to the more basic issue of whether a person simply qualifies as an employee.

[3] Appellant erroneously conflates the joint enterprise doctrine with the "joint employer" doctrine. The latter doctrine "applies where there is no single integrated enterprise, but where two employers handle certain aspects of their employer-employee relationship jointly." *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009). In other words, "[j]oint employment arises when the employee 'per-

7

*See Avelar v. Ed Quiros, Inc.*, No. 13-CV-7017 ADS AYS, 2015 WL 1247102, at *4 (E.D.N.Y. Mar. 18, 2015) ("[W]here . . . plaintiffs seek to impose liability against two defendant corporations for the same labor, they must establish that the two entities were a joint 'enterprise,' a requisite element for imposing liability against two defendant corporations under the FLSA and under the NYLL." (citations omitted); *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14CV5269ARRJO, 2016 WL 5092588, at *16 (E.D.N.Y. Sept. 19, 2016) ("The 'single integrated enterprise' doctrine allows for multiple defendants to be jointly and severally liable for any FLSA and NYLL violations."). Under this doctrine, "[a] 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise."[4] *Bravo v. Established Burger One, LLC*, No. 12 CIV. 9044 CM, 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013) (quoting *Perez v. Westchester Foreign Autos, Inc.*, No. 11 CIV. 6091 ER, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013)). Furthermore, where a joint enterprise exists, courts may impose liability for an NYLL violation "not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Id.* (quoting *Arculeo v. On–Site Sales & Mktg.,* LLC, 425 F.3d 193, 198 (2d Cir. 2005)). Thus, appellant's failure to provide documentation of his work for debtor specifically does not necessarily imply that debtor was not his employer under a single-integrated enterprise theory, especially given that its owner, Keshtgar, also owned the other gas stations where appellant worked.

In regards to the second rationale, the Bankruptcy Court did not explain why appellant failed to prove that Kumar had the authority to bind debtor or what standard it was employing to make this determination. Under New York agency law, an agent of a principal "can have actual or apparent authority." *Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 253 (S.D.N.Y. 2014); *see also Greene v. Hellman*, 412 N.E.2d 1301, 1306 (N.Y. 1980). As the Second Circuit has explained, "an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010). An agent who lacks actual authority "may nonetheless bind his principal to a contract if the principal has created the appearance of authority, leading the other contracting party to reasonably believe that actual authority exists." *Id.* at 328.

Kumar's actual or apparent authority to bind debtor is unquestionably relevant to the degree of control debtor exerted over appellant under the *Carter* and *Bynog* factors, but the Bankruptcy Court did not specify whether it was analyzing his actual authority, apparent authority, or both. Based on the language of the Oral Ruling, it appears the Bankruptcy Court only concluded that appellant failed to establish Kumar's actual authority to "bind Holbrook to pay [appellant] off the books or outside the standard scanning protocol." (Oral Ruling at 16 (explaining that appellant did not prove Kumar had this authority because appellant only "testi-

---

forms work which *simultaneously* benefits two or more employers and one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee." *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-CV-2506 RLM, 2014 WL 6674583, at *8 (E.D.N.Y. Nov. 25, 2014).

[4] To determine whether several entities operated as a joint enterprise, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014).

8

fied that Mr. Kumar had him drive to different gas stations to cover various shifts and pick up cash deposits").)  It did not examine whether Kumar had the apparent authority to do so.  The extent to which Kumar had this authority to act on debtor's behalf, however, is crucial to an evaluation of debtor's control, and, therefore, it was error for the Bankruptcy Court not to clearly address apparent authority.[5]

In short, the two rationales cited by the Bankruptcy Court are alone insufficient to establish that appellant was not an "employee" of the debtor under the relevant legal standards.  Therefore, the Court reverses the decision below on this ground and remands for reconsideration in a manner consistent with this opinion.  Specifically, on remand, the Bankruptcy Court should first consider whether debtor was part of a single-integrated enterprise with Keshtgar's other companies.  *See, e.g.*, *Juarez*, 29 F. Supp. 3d at 367; *Bravo*, 2013 WL 5549495, at *8.  If so, it then must assess the degree of control the enterprise exerted over the appellant, accounting for the *Carter* and *Bynog* factors and treating the entities as a single employer.[6]  *See Irizarry*, 722 F.3d at 104–05; *Bynog*, 802 N.E.2d at 1092–93.  It may also consider whether Kumar had actual or apparent authority to act on behalf of the enterprise in analyzing the enterprise's control over appellant.  *See, e.g.*, *Chelsea v. New York Hotel and Motel Trades Council*, *AFL-CIO*, No. 07 Civ. 2614 (PAC), 2014 WL 4813028, at *8-13 (S.D.N.Y. Sept. 29, 2014) (analyzing both joint employer and agency issues).

### B.  Burden of Proof

Appellant further argues that the Bankruptcy Court erroneously applied the burden of proof.  As set forth below, the Court concludes that consultation of the law governing burdens of proof in the FLSA and NYLL context is warranted on remand.

The burden-shifting framework for objections to claims filed under the Bankruptcy Code is well-settled.  Under 11 U.S.C. § 502(a) a proof of claim "is deemed allowed, unless a party in interest . . . objects."  Federal Rule of Bankruptcy Procedure 3001 states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see also In re Taranto*, No. 10–76041–ast, 2012 WL 1066300, at *5 (Bankr. E.D.N.Y. Mar. 27, 2012); *In re King*, No. 08–61922, 2010 WL 4290527, at *5 (Bankr. E.D.N.Y. Oct. 20, 2010)).  Rule 3001 also "requires a claimant to attach supporting documentation to a proof of claim." *In re Aiolova*, No. 11-10503 (BRL), 2013 WL 5818893, at *2 (Bankr. S.D.N.Y. Oct. 29, 2013); *see also* Fed. R. Bankr. P. 3001(c)(1) ("[W]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim.").  "If a proof of claim is not supported by the requisite documentation, it is not presumed to be *prima facie* valid." *In re Aiolova*, 2013 WL 5818893, at *3; *see also In re Minbatiwalla*, 424 B.R. 104, 112

---

[5] Appellant presented some evidence that Kumar had the apparent authority to bind debtor.  He stated unequivocally that Kumar hired him to work at the Centerreach station, as a floater, and at debtor's gas station specifically in January 2015.  (R. at 72–74.)  He also testified that he believed Keshtgar was his boss (*id.* at 227–28), that Kumar "assigned [him] shifts at Holbrook" (*id.* at 227), and that Keshtgar acknowledged his employment, at least casually (*id.* at 72).  Even Settani admitted that Kumar was debtor's manager prior to the petition date.  (*Id.* at 231.)  Nevertheless, having not had the opportunity to evaluate the credibility of the witnesses, this Court takes no position on whether this evidence was sufficient to establish apparent authority.

[6] The Bankruptcy Court should also consider whether the debtor was a joint employer and, if so, apply the same framework.

9

(Bankr. S.D.N.Y. 2010) ("Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim."); *Green Tree Servicing, LLC v. Wilson (In re Wilson)*, 532 B.R. 486, 490 (S.D.N.Y. 2015) (same).

If the claimant makes out a *prima facie* case for the validity of a claim, "[t]he objecting party [then] bears the burden of putting forth sufficient evidence to rebut" the claim. *In re Taranto*, at *5 (citing *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 540 (S.D.N.Y. 2001)). The debtor "must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also In re Cross Island Plaza, Inc.*, No. 12-42491 (NHL), 2015 WL 4610382, at *13 (Bankr. E.D.N.Y. July 30, 2015) ("The objector must 'produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" (quoting *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991))). If it does so, "the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence." *In re Residential Capital, LLC*, No. 12-12020 (MG), 2013 WL 5952004, at *4 (Bankr. S.D.N.Y. Nov. 7, 2013). The claimant "bears the burden of persuasion as to the allowance of their claim." *In re Feinberg*, 442 B.R. 215, 221 (Bankr. S.D.N.Y. 2010).

The Bankruptcy Court recited and applied this framework in disallowing appellant's claim. (*See* Oral Ruling at 8–9, 17.) Nevertheless, appellant argues that the Bankruptcy Court erred in its application of this framework, claiming that it should have considered the rules governing the burdens of proof in the FLSA and NYLL context.

As the Supreme Court has held, the "basic federal rule in bankruptcy is that state law governs the substance of claims," and, therefore, bankruptcy courts [must] consult state law in determining the validity of most claims." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007). In *In re Santos*, No. BAP CC-06-1436-PAAK, 2007 WL 7540980, *5 (B.A.P. 9th Cir. July 11, 2007), for example, the claimants filed claims for unpaid wages to which the debtors objected, asserting that, "according to various oral and implicit agreements," the claimants had been fully compensated. The Bankruptcy Court held that, under California labor law, the debtors did not produce admissible evidence to contradict the claimants' evidence. *Id.* at *4. The Ninth Circuit's bankruptcy panel held that, "[i]n evaluating the burden of proof, the bankruptcy court properly looked to the law of California as the applicable law for wage disputes in that state." *Id.* at *5.

Here, by contrast, the Bankruptcy Court did not consult the underlying substantive law when evaluating the burden of proof. Given that appellant's claims for unpaid wages arise under the FLSA and NYLL and that the law applicable to those statutes plays such a significant role in the determination of whether he was employed under Section 502(a), the Court concludes that, in evaluating the burden of proof under the Bankruptcy Code on remand, the Bankruptcy Court should consider the rules governing burdens of proof under the FLSA and NYLL.[7] *See*

---

[7] Like the Bankruptcy Code, the FLSA also utilizes a burden-shifting framework. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). A purported employee bears the initial burden of proving entitlement to wages. *See id.* If the employer keeps accurate records, the employee need only obtain and produce those records to satisfy his burden. *Id.* On the other hand, "where the employer's records are inaccurate or inadequate and the

10

*id.* at 5.

### C. New Evidence

Appellant also requests that this Court remand so that the Bankruptcy Court can account for new evidence appellant has uncovered in the course of separate litigation against debtor. (Appellant's Reply at 6–9.) Specifically, appellant argues that, in a separate wage and hour litigation in this Court, Keshtgar and Settani contradict key representations made by debtor to the Bankruptcy Court at the evidentiary hearing. For example, appellant asserts that, in response to interrogatories, Keshtgar and Settani contradict that Kumar acted as a rogue manager in hiring and paying any workers off the books. Because the Court is remanding on other grounds, it need not address whether remand is separately warranted based on the new evidence. The Bankruptcy Court should, however, consider the new evidence in light of the remand and the need to re-evaluate all the evidence in context of the applicable legal standard.

### IV. CONCLUSION

For the reasons set forth above, the Court concludes, under *de novo* review, that the Bankruptcy Court did not apply the correct legal standard in determining that appellant was not an employee of the debtor. Therefore, its order is reversed and the case is remanded for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: August 29, 2017
Central Islip, New York

\* \* \*

Appellant is represented by Holly M. Martin, Kara E. Neaton, and Scott D. Talmadge, Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019-9710, as well as Richard E. Blum, The Legal Aid Society, Civil Appeal & Law Reform Unit, 199 Water Street, 3rd Floor, New York, NY 10038. Debtor is represented by Michael J. Macco and Richard L. Stern, Macco & Stern LLP, 2950 Express Drive South, Suite 109, Islandia, NY 11749.

---

employee cannot offer convincing substitutes," the employee can meet the initial burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (quoting *Anderson*, 328 U.S. at 687–88). This burden "is not high," and an employee can meet it "through estimates based on his own recollection." *Id.* If he does so,

> [t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* (quoting *Anderson*, 328 U.S. at 687–88).

Here, appellant makes various, record-based assertions about the adequacy of the records produced by debtor under this framework. The Court takes no position on these assertions, but leaves it to the Bankruptcy Court to address them on remand.

11